UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTINE BODY,

       Plaintiff,

 v.                         Case No. 8:13-cv-1215-T-33TGW

ROBERT A. MCDONALD, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

       Defendant.

_____/

## ORDER

This cause comes before the Court pursuant to Defendant Robert A. McDonald, Secretary, Department of Veterans Affairs' (V.A.) Motion for Summary Judgment (Doc. # 30), which was filed on September 18, 2014. Plaintiff Kristine Body filed her response in opposition to the V.A.'s Motion on October 20, 2014. (Doc. # 36). Thereafter, the V.A. filed its reply on October 20, 2014. (Doc. # 38). With leave of Court, Body then filed a sur-reply to the Motion on November 13, 2014. (Doc. # 42). For the reasons that follow, the Court grants the V.A.'s Motion.

## I.   Background

Body is an employee at Bay Pines VA Health Care System (Bay Pines VAHCS) and has been employed there since 2002.

(Doc. # 8 at 3-4). Body holds two positions at Bay Pines VAHCS. (Id. at 4). She spends fifty percent of her time as a Medical Tech and Laboratory Safety Officer in Pathology and Laboratory Medicine Services (PLMS) and fifty percent of her time as the Controlled Substance Inspection Coordinator (CSC). (Id.). Body's immediate supervisor is Harry Kern, a Chemistry Supervisor GS-12 at Bay Pines VACHS. (Id. at 3). Colleen Debacker is a Laboratory Manager GS-13 at Bay Pines VACHS, and she is Kern's immediate supervisor. (Id.).

Body contends that she has been (1) discriminated against due to her age and sex and (2) has been subjected to a hostile work environment. (Id.). Specifically, Body alleges the following occurrences to support her discrimination and hostile work environment claims:

(a)  In July 2009, Debacker told Body that she would be demoted if she did not continue as the Laboratory Safety Officer.

(b)  In September 2009, Debacker tried to force Body to perform her Laboratory Safety Officer duties during the same time she was performing the Controlled Substance tour for the Director's office.

(c)  On December 19, 2010, Kern denied Body's leave request for March 26, 2011 to April 1, 2011, because she refused to swap weekends, and he was pressuring her to change her tour of duty.

(d)  On January 10, 2011, during a Laboratory Safety Committee Meeting, Debacker told Body

2

that she was not to do all the Fire Safety
Training, which diminished Body's position as
Laboratory Safety Officer.

(e)   On June 2, 2011, Kern tried to retract
approval of Body's leave for July 6, 2011 to
July 20, 2011, because Body would not swap
weekends and he was pressuring her to change
her approved tour of duty.

(f)   On June 20, 2011, Kern and Debacker told Body
that if she did not find her own coverage for
the weekend; she would be issued a reprimand.

(g)   In 2011, when Body asked Kern why Debacker was
excluding her from safety issues duties, Kern
responded that Debacker was exploring demoting
Body, if she was not the Safety Officer.

(h)   On August 9, 2011, Debacker changed the
procedure for disposing biohazard materials
without notifying or discussing with Body, who
is the Laboratory Safety Officer.

(i)   On August 12, 2011, Debacker got approval from
Kim Linzer the Green Environmental Management
Services (GEMS) Coordinator, to dispose
chemical waste in biohazard streams without
discussing with Body, which diminished Body's
duties as Laboratory Safety Officer.

(j)   On August 29, 2011, Debacker informed Body
that she was not allowed to speak with the
Safety Committee about new policies without
getting approval from her and Dr. Strickland.

(k)   On August 30, 2011, Debacker appointed another
employee to represent Chemistry on the Safety
Committee, although Body had held this
position since 2004.

(l)   On November 16, 2011, Debacker failed to
notify Body of a chemical spill in the
Laboratory, and she assigned two other
employees to redesign the protocol without

including Body, which diminished her position as Safety Officer.

(m)  On December 7, 2011, during Body's performance evaluation with Kern, Kern stated "No one likes you; you don't get along with anyone; by giving you a bad evaluation it will give you incentive to find a new job; your skills are not being utilized in the Lab; you are too good to be in this department."

(n)  On December 19, 2011, when Body requested a copy of her performance evaluation, Kern referred her to Human Resources.

(o)  On December 22, 2011, Kern told Body that her leave request for March 14-23, 2012 would be denied unless she found her own coverage.

(p)  On December 22, 2011, Body learned that Kern and Debacker made false statements on her performance evaluation.

(q)  On January 13, 2012, although Body made backup plans for the CAP inspection, Debacker went through the Laboratory shouting, "Where is Kris Body! I am dying here!" making it appear that Body was negligent in her duties.

(r)  On January 13, 2012, when Body reported to duty, she was directed to Debacker's office to address safety issues during the CAP inspection and Debacker dismissed her by waiving her fingers in the air saying, "We don't need you."

(Id. at 6-7). Body contends that she was discriminated against when she received a "fully successful" performance evaluation and when her leave request was denied. (Id. at 7). According to the V.A., "[d]uring the time alleged in her Complaint, [Body's] duties and responsibilities have not changed, only

4

her job titles/classification has changed." (Doc. # 30 at 2). Furthermore, Body has received step increases in her GS scale, every year since 2009, and also received "successful" or higher in all her performance evaluations. (Id. at 3). The V.A. also states that "at the time alleged in the Complaint, [the V.A.] approved [Body's] leave as follows: as long as there was minimum staffing, first requested, first approved with the exception during summer months in which seniority took precedence". . . and "[] [the V.A.] based [Body's] leave upon V.A. policy and procedure." (Id. at 4).

## II.   **Procedural History**

On May 7, 2013, Body filed a Complaint against the V.A. for sex and age discrimination and hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), including 42 U.S.C. § 2000e-16 and the Age Discrimination in Employment Act of 1967 (29 U.S.C § 626). (Doc. # 1). Body thereafter filed an Amended Complaint on May 28, 2013. (Doc. # 8). In Count I of the Amended Complaint, Body alleges that she was "denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant due to age and sex." (Id. at 7). In Count II, Body alleges that as a result of the V.A.'s actions she has been subjected to a hostile work

environment. (Id. at 8). Body alleges that she has suffered damages including but not limited to: "loss of pay; loss of wages, loss of back pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; a lower performance appraisal; payment of attorneys' fees and legal costs; harm to her professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress." (Id. at 9). In Count III Body seeks to enjoin the V.A. from "[v]iolating Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, et seq., and 29 USC 626. . . ." (Id. at 10).

## III. __Summary Judgment Standard__

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742

(11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing *Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

## III. Analysis

### A.   Discrimination

"In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence, or statistical evidence." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Body presents no statistical evidence of discriminatory intent; therefore, the Court will evaluate the existence of direct and circumstantial evidence below.

### 1.   Direct Evidence

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Only the most blatant remarks,

whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." Tippie v. Spacelabs Med., Inc., 180 F. App'x 51, 54 (11th Cir. 2006) (quoting Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095, 1105 (11th Cir. 2001)).

In the present case, Body accuses Debacker of denying Body opportunities that she was entitled to and subjecting Body to adverse employment actions. (Doc. # 30 at 2). Specifically, Body testified as follows to Debacker's actions:

> Q:  Okay and tell me what you've observed?
>
> A:  Well, when Colleen Debacker first came on she dramatically changed the culture of the laboratory and started targeting protected worker, staff.
>
> She developed a pattern of purging the department, and one of – they – they purged the department not through attrition but through harassing, intimidating, and pressuring people to quit.
>
> Five out of eight supervisors either took early retirement, stepped down or took another position. The administrative officer took early retirement. Four techs, they were either fired or accepted positions elsewhere. And two lead techs, both in chemistry, one was forced into early retirement, the other one went on vacation and did not bother to come back.
>
> Out of those twelve, nine of them were older

females, one was a gay Hispanic man.

She went on to escalate that discriminatory process to direct it towards single females, and the way that she initiated her discriminatory practices was through denying training opportunities for older women.

She denied – she put a [ceiling] on the older women's ability to be promoted.

She assigned unfavorable tasks to females.

She intentionally created a hostile work environment by assigning task performance, withholding the time to do the – to perform the jobs, and then holding you accountable for the failure.

(Body Dep. Doc. # 30-1 at 19). Body further alleged that on January 13, 2012, although Body made backup plans for the CAP inspection, Debacker went through the Laboratory shouting, "Where is Kris Body! I am dying here!" making it appear that Body was negligent in her duties. (Doc. # 8 at 7); (Doc. # 36 at Ex. H). Additionally, on January 13, 2012, when Body reported to duty, she was directed to Debacker's office to address safety issues during the CAP inspection and Debacker dismissed her by waiving her fingers in the air saying, "We don't need you." (Id.).

The Court notes that, "[t]o amount to direct evidence, a statement must: (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision;

and (3) reveal blatantly discriminatory animus.  <u>Chambers v. Walt Disney Co.</u>, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Body contends in her response to the V.A.'s Motion that this is unquestionably a direct evidence case. (Doc. # 36). However, the V.A. argues that the comments by Debacker and Kern do not amount to direct evidence of sex and age discrimination. (Doc. # 30 at 12). This Court agrees. Because "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption . . . remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  <u>Standard</u>, 161 F.3d at 1330.

In this case, Body has produced no evidence demonstrating that the remarks complained of specifically relate to the challenged employment decision nor do they demonstrate discriminatory animus. "[D]irect evidence can mean nothing other than evidence from which a trier of fact could conclude, more probably than not, that the defendant discriminated against the plaintiff in regard to the contested employment decision on the basis of a protected personal characteristic." <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1306 (11th Cir. 1999).

The record reflects that the allegedly discriminatory

11

statements contain no implied reference to age or sex. Because Debacker and Kern's statements do not relate to the discrimination claims in this case - namely, Body's claims that she was wrongfully denied opportunities on the basis of age and gender and given a performance rating inferior to the year prior - the statements do not amount to direct evidence of discrimination. Body has failed to meet her burden that the statements detailed in her Complaint, made by Debacker and Kern, demonstrate a discriminatory animus towards her.

**2.   Circumstantial Evidence**

Having determined that Body has produced no direct evidence of age or sex discrimination, the Court now proceeds to evaluate the circumstantial evidence presented. In analyzing allegations supported by circumstantial evidence under Title VII and the ADA, the Court follows the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. McDonnell Douglas, 411 U.S. at 802-03. Once the plaintiff has established a prima

facie case, the burden of proof shifts to the defendant.  Id.;
Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939
(11th Cir. 2006).

     To rebut the presumption of discrimination created by a
plaintiff's prima facie case, the defendant must provide
"legitimate, nondiscriminatory reason[s]" for the employment
action taken against the plaintiff. Tex. Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard, 161
F.3d at 1331. However, "[t]his is a burden of production, not
persuasion." Standard, 161 F.3d at 1331. A defendant "must
merely produce evidence that could allow a rational fact
finder to conclude" its actions were not motivated by
discriminatory animus.  Id.

     If the defendant produces such evidence, the burden
shifts again to the plaintiff. McDonnell Douglas, 411 U.S. at
802-03. The plaintiff then "has the opportunity to come
forward with evidence, including the previously produced
evidence establishing [her] prima facie case, sufficient to
permit a reasonable fact-finder to conclude that the reasons
given by the employer were not the real reasons for the
adverse employment decision." Combs v. Plantation Patterns,
106 F.3d 1519, 1528 (11th Cir. 1997).

     In the instant case, the Court need not employ this

burden-shifting analysis because Body has failed to establish a prima facie case of discrimination. "To make out a prima facie case of sex and age discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

Since Body relied solely on the fact that this was a direct evidence case, Body has failed to show that similarly situated employees of other ages and a different gender were treated more favorably. "To show that employees are similarly situated, the plaintiff must show that the 'employees are similarly situated in all relevant respects. . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003). "[A] comparator must be 'nearly identical' to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Dickinson, 187 F. App'x at 939 (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)).

14

In response to the V.A.'s Motion, Body attempts to compare her treatment to that of other, similarly situated employees. For instance, Body claims that "there is evidence that high performing employees prior to the arrival of Debacker were pushed out." (Doc. # 39 at 16). Body directs this Court to the Fiscal Year Evaluations for 2010 to 2011. (Id.). Body contends that the "evaluations of all comparable older females [] were lowered in FY2011, including []Body." (Id.). However, Body fails to definitively establish whether the other employees, namely male or younger employees, were similarly situated in all relevant aspects to determine discrimination under an impermissible category.

Furthermore, the record remains devoid of any evidence relating to the respective work histories of these employees or files substantiating similar occurrences to those allegedly experienced by Body. The Court cannot discern, for instance, whether these employees had ever been disciplined, whether they were denied vacation or access to employment opportunities, whether their employee records contained written warnings of excessive tardiness or absences, or whether they were terminated.

Body's vague recitation that "they all observed the targeted harassment of the older females" falls short of

demonstrating that any of the named employees should be considered similarly situated for purposes of this case. See Knight, 330 F.3d at 1318 (finding that two employees were not similarly situated where one employee's "documented performance and tardiness problems were much worse than [the other's] in both number and nature," and considering the relative improvement of each employee's disciplinary history over time). "Personal opinions and conclusory allegations, in the absence of supporting evidence, are insufficient to withstand summary judgment." King v. Ferguson Enters., Inc., 971 F. Supp. 2d 1200, 1210 (N.D. Ga. 2013) aff'd, 568 F. App'x 686 (11th Cir. 2014)(quoting Chambers, 132 F. Supp. 2d at 1365).

Accordingly, Body has failed to establish that these employees were similarly situated for purposes of evaluating their allegedly different treatment in performance evaluations. To that end, Body has not identified another employee who engaged in the same activities as she did and subsequently received more favorable treatment than Body. Body simply states that "[all] of a sudden all [females] needed to be marked down a full performance grade. Conversely, males did not have their evaluations marked down." (Doc. # 36 at 20).

Without any evidence regarding the comparator employees' individual work histories (indeed, the Court lacks any employment information whatsoever regarding these other V.A. employees), the Court cannot find that these other employees were similarly situated to Body. Accordingly, Body has failed to establish a prima facie case of discrimination with regard to the disciplinary actions alleged.

Moreover, even if Body had established a prima facie case of discrimination for the employment actions described herein, summary judgment for the V.A. would still be appropriate. The V.A. has provided legitimate, nondiscriminatory reasons for each allegation set forth by Body, and Body has failed to show that those reasons were pretextual. "To demonstrate pretext, the plaintiff must show both that the employer's proffered reason is false, and that discrimination was the real reason." Connor v. Bell Microproducts-Future Tech, Inc., 492 F. App'x 963, 966 (11th Cir. 2012).

The V.A. contends that it had legitimate, non-discriminatory reasons justifying its actions. Specifically, the V.A. states that it followed proper policy and procedure in denying leave and Body was able to take a substantial amount of leave. (Doc. # 30 at 25). Kern testified that Body

17

was denied leave as a matter of procedure in accord with staff scheduling and use of over time or compensatory time procedures set out by the V.A. (Kern Dep. Doc. # 30-2 at 13). Furthermore, Body has not been demoted or terminated. (Id.). "[A]pplying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on disagreement with the employer's reassignment of job tasks." Byrne v. Ala. Alcoholic Bev. Control Bd., 635 F. Supp. 2d 1281, 1292-93 (M.D. Ala. 2009). Such claims "strike at the very heart of an employer's business judgment and expertise, and, in particular, with regard to public entities, their responsibility of balanc[ing] limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public." Id. As for Body's performance evaluations, the V.A. maintains that Body received the evaluation she earned, and she still received yearly salary increases. (Doc. # 30).

Body argues that the "[V.A's] conclusory claim [that] []Body received the evaluation she earned ignores what happened to [four] other older females at the exact same time." (Doc. # 39 at 17). According to Body, "apparently all comparable older females received what they earned which was an overnight drop by one performance level in their

18

evaluations when males did not." (Id. at 20). Although the Court notes Body's arguments as to this matter, she simply has not met the standard of identifying similarly situated individuals that were younger or male with the same responsibilities that were treated more favorably. Body has accordingly failed to demonstrate that the V.A.'s proffered reasons for the performance grade of her evaluation report were pretextual and that discrimination was the real reason for these actions.

**B.   Hostile Work Environment Claim**

Relying on the Amended Complaint, Body bases her hostile work environment claim on allegations of discriminatory conduct by personnel at the V.A. (Doc. # 8 at 9). To prove a prima facie case of hostile work environment, Body must establish that: (1) she belongs to a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment, and (5) a basis exists for holding the V.A. liable. Gupta v. Fla. Board of Regents, 212 F.3d 571, 582 (11th Cir. 2000) (citing Mendoza v. Borden, Inc., 195 F.3d

1238, 1245 (11th Cir. 1999) (en banc), <u>cert. denied</u>, 531 U.S. 1076 (2001)).

Whether the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," is crucial in determining whether a plaintiff has proven a hostile work environment claim. <u>Gupta</u>, 212 F.3d at 583. A hostile work environment exists only where the work environment is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)(internal citations omitted). Even if the plaintiff is able to prove one factor in the prima facie case, this "does not compensate for the absence of the other factors." <u>Mendoza</u>, 195 F.3d at 1248.

To establish the threshold of severity or pervasiveness, both an objective and subjective component must be present. <u>Mendoza</u>, 195 F.3d at 1246. In assessing the objective component, four factors should be considered: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether

20

the conduct unreasonably interferes with the employee's job performance. Id.

As a threshold matter, Body offers no evidence to support her contention that the alleged discriminatory treatment was related to any protected characteristic. Title VII only "prohibits discrimination, including harassment that discriminates based on a protected category such as sex." Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301-02 (11th Cir.2007). Even if Debacker and Kern were intimidating and overbearing, if the conduct was not based upon gender, then Title VII provides no redress. See Coutu v. Martin Cnty Bd. of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) ("Unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII."). Even if the Court assumes that the alleged treatment was somehow related to a protected characteristic, it does not rise to the level required by Mendoza and its progeny.

Additionally, Body points to Debacker and Kern's alleged comments as a basis for her hostile work environment claim. Body mentions the following alleged remarks: (1) On December 7, 2011, during Body's performance evaluation with Kern, Kern stated, "No one likes you; you don't get along with anyone;

21

by giving you a bad evaluation it will give you an incentive to find a new job; your skills are not being utilized in the Lab; you are too good to be in this department."; (2) On January 13, 2012, although Body made backup plans for the CAP inspection, Debacker went through the Laboratory shouting, "Where is Kris Body! I am dying here!" making it appear that Body was negligent in her duties; and (3) On January 13, 2012, when Body reported to duty, she was directed to Debacker's office to address safety issues during the CAP inspection and Debacker dismissed her by waiving her fingers in the air saying, "We don't need you." (Doc. # 8 at 6-7).

Conduct far more severe or pervasive than what Body has alleged has failed to meet the high threshold of proof in the Eleventh Circuit. See e.g., Godoy v. Habersham Cnty, 211 F. App'x 850, 853-54 (11th Cir. 2006) (summary judgment affirmed [under Title VII] where a plaintiff from South America claimed he was subject to racial slurs "almost every shift," and that his supervisor battered him and told him "to go back to his boat and sail to South America where he belongs."). As stated above, Body's claim must fail because she has not proven that any perceived animus was based on her gender or age, the protected characteristics.

In light of the requirement needed to establish severe or pervasive conduct, Body's allegations of discrimination through inappropriate comments do not meet the <u>Mendoza</u> standard. 195 F.3d at 1245. Accordingly, no prima facie case for the hostile work environment claim has been established.

## IV. <u>Conclusion</u>

Body claims to have been subjected to a hostile work environment and harassment based upon sex and age. Body solely relies on the fact that she believes this is a direct evidence case. However, this Court disagrees. Body has failed to establish that other, similarly situated employees outside her protected class were treated more favorably. Thus, she has failed to establish a prima facie case of discrimination, and has not proffered sufficient evidence for a hostile work environment claim. Accordingly, the Court finds that summary judgment for the V.A. is appropriate. Furthermore, even if Body had successfully identified such similarly situated employees who were treated more favorably, Body nonetheless has failed to demonstrate that the legitimate, nondiscriminatory reasons offered by the V.A. for their actions were pretextual. The Court therefore grants the V.A.'s Motion for Summary Judgment.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Robert A. McDonald, Secretary, Department of Veterans Affairs, Dispositive Motion for Summary Judgment (Doc. # 30) is **GRANTED.**

(2)   The Clerk is directed to enter judgment in favor of Defendant.

(3)   The Clerk is further directed to **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of December, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel and Parties of Record